20.50

## IN THE DISTRICT COURT OF KAY COUNTY
## STATE OF OKLAHOMA

BOB COFFEY, LORETTA CORN,                )
AND LARRY AND MARY ELLEN JONES,          )
INDIVIDUALLY AND ON BEHALF OF            )
ALL OTHERS SIMILARLY SITUATED,           )
                                         )
    PLAINTIFFS,                          )
                                         )
v.                                       )
                                         )
1. FREEPORT-MCMORAN COPPER               )
   & GOLD INC.;                          )
                                         )
2. PHELPS DODGE CORPORATION;             )
                                         )
3. CYPRUS AMAX MINERALS                  )
   COMPANY;                              )
                                         )
4. AMAX, INC. f/k/a AMERICAN METAL       )
   CLIMAX, INC. f/k/a THE AMERICAN       )
   METAL COMPANY;                        )
                                         )
5. BLACKWELL ZINC COMPANY, INC.;         )
                                         )
6. BLACKWELL INDUSTRIAL                  )
   AUTHORITY; and                        )
                                         )
7. BNSF RAILWAY COMPANY f/k/a            )
   BURLINGTON NORTHERN INC. f/k/a        )
   BURLINGTON NORTHERN                   )
   RAILROAD COMPANY f/k/a THE            )
   BURLINGTON NORTHERN and               )
   SANTA FE RAILWAY COMPANY,             )
                                         )
    DEFENDANTS.                          )

CJ-2008-68

**CLASS ACTION**

Filed in the DISTRICT COURT
Kay County, Oklahoma

APR 1 4 2008

MARY RAMEY, Court Clerk
BY _____
               DEPUTY

# THIS CASE ASSIGNED TO
# JUDGE D.W. BOYD

## PLAINTIFFS' ORIGINAL PETITION

COME NOW Plaintiffs, BOB COFFEY, LORETTA CORN and LARRY AND MARY

ELLEN JONES, individually and on behalf of all others similarly situated (hereinafter

"Plaintiffs"), complaining of Defendants Freeport-McMoRan Copper & Gold Inc.,

**EXHIBIT**

N

independently, as successor-in-interest to Phelps Dodge Corporation, and as alter ego of Blackwell Zinc Company, Inc.; Phelps Dodge Corporation, independently, as successor-in-interest to Cyprus Amax Minerals Company and as alter ego of Blackwell Zinc Company, Inc.; Cyprus Amax Minerals Company, independently, as successor-in-interest to Cyprus Minerals Company and AMAX, Inc. and as alter ego of Blackwell Zinc Company, Inc.; AMAX, Inc. f/k/a American Metal Climax, Inc. f/k/a The American Metal Company, independently and as alter ego of Blackwell Zinc Company Inc.; Blackwell Zinc Company, Inc.; Blackwell Industrial Authority; and BNSF Railway Company f/k/a Burlington Northern Inc. f/k/a Burlington Northern Railroad Company f/k/a The Burlington Northern and Santa Fe Railway Company (collectively, the "Defendants"), and for causes of action state as follows:

## I. Introduction

1.    Defendants created, sustained and covered-up a public nuisance in the City of Blackwell that has severely damaged the town and its people.  Defendants should not be allowed to commit these horrible wrongs without consequence.  Plaintiffs will not sit idly by as these multinational mega-corporations leave their town for dead.  Instead, Plaintiffs intend to restore what is rightfully theirs:  a quiet, safe and pleasant community in which to live, raise and educate their children, work, enjoy life and retire.  It is for these reasons that Plaintiffs, on behalf of all Blackwell residents, bring this lawsuit and demand that justice be done.

2.    Plaintiffs' properties have been invaded by, and they have been exposed to, millions of pounds of toxic, damaging and hazardous waste material released as a result of Defendants' wrongful conduct at the former zinc production facility known as the Blackwell Zinc Smelter in Blackwell, Oklahoma (the "Smelter").  These deadly, dangerous substances were generated from primary and secondary zinc production and related processes at the Smelter and

were distributed throughout the community by the Smelter stack and various fugitive sources.[1] Additionally, this toxic waste was used throughout the community for a multitude of different purposes including, but not limited to, use as landfill and for the construction of roads, driveways, parking lots, and the Blackwell High School track.

3.     As a result of the Defendants' creation, sustainment and cover-up of their trespass and public nuisance, the real properties of Plaintiffs and Plaintiffs themselves have been and continue to be contaminated with the deadly, dangerous substances contained within the dust, smoke and other releases from the Smelter.  The creation of these dangerous toxins from the Smelter and their contamination of the City of Blackwell occurred on a continual basis for almost 60 years while the Smelter was in operation.  This contamination has continued for the past 34 years since the Smelter's closure.  The dangerous nature of Defendants' actions has been and continues to be covered-up through their deceit.  Accordingly, Defendants are responsible for more than 90 years worth of contamination—contamination that continues to do harm each passing day.  Despite their knowledge of the dangers associated with their conduct, Defendants did nothing to provide Plaintiffs with notice or warning of the discharge of these deadly, dangerous substances to their real properties and persons.

## II. Factual Statement

4.     By the end of the 19th century, natural gas had become the primary fuel for smelting operations.  As the natural gas reserves in Kansas and Missouri diminished, zinc smelting migrated to Oklahoma, an area still rich in natural gas.  The first facility in Oklahoma

---

[1] Fugitive sources are those air emissions that emanate from facilities into the atmosphere through mechanisms other than stacks, chimneys, ducts or similar equipment.  For example, at the Smelter, fugitive emissions emanated from various sources throughout the plant including, but not limited to, vents in buildings, railcar unloading activities and wind-blown dust generated by slag piles.

was opened near Bartlesville in 1907 and was quickly followed by many others, including the Blackwell Zinc Smelter.

5. The Smelter, a facility used to refine zinc and cadmium ore concentrates, was located in Blackwell, Oklahoma, from its opening in 1916 until its closure in 1974. The Smelter was operated by Defendant Blackwell Zinc Company, Inc. ("Blackwell Zinc Company"), a subsidiary of Defendant Amax, Inc. ("Amax"). The arrival of the new industry transformed Blackwell, bringing great growth and prosperity to the once-sleepy community. By 1930, Blackwell was home to more than 9,500 Oklahomans, almost four times the population recorded in the 1900 census. By 1950, the Smelter had become the single largest horizontal retort smelter in the world, employing more than 950 workers. The Smelter itself encompassed 80 acres on the eastern edge of town and was surrounded by an additional 700 acres comprising the Smelter facility.

6. During its operational life, workers at the Smelter produced millions of tons of zinc alloy for use in many galvanized iron and steel products, including water piping, windmills, water tanks, siding, roofing and lightning rods. Due to its size and its ability to produce high volumes of zinc, the Smelter played an integral role in both World Wars, as zinc was needed for many wartime products. The Smelter, its employees and the City of Blackwell enjoyed economic success throughout the 1940s and 1950s. The erection of a new sintering plant in 1951 further propelled growth and led to the 1957 opening of a cadmium plant that produced products used in paints, pigments, ceramics, television phosphors and chemical compounds.

7. The ore used as raw material for these products, brought to the Smelter from Joplin, Missouri and later from Mexico, Canada and Australia, contained up to 20% lead and considerable cadmium. Defendants continuously piled these substances on and around the

Smelter facility.  Eventually, Defendants would spread these toxic wastes throughout the Blackwell community and infiltrate and contaminate the property and people who proudly made Blackwell their home.  This contamination would occur without the knowledge of the town's residents.

8.    Although the citizens of Blackwell were unaware of the dangers that existed and those that loomed ahead, Blackwell Zinc Company and AMAX knew the byproducts created at the Smelter contained dangerous compounds unfit for human exposure or ingestion.  In a February 21, 1939 letter written to all smelter operators by the Tri-State Zinc and Lead Ore Producers Association, the industry recognized that dust emissions were so bad that it called them a "nuisance" and a "constant source of agitation and discontent."  Later that same year, the Producers Association acknowledged that the dust was a "hazard" and that steps were needed to prevent the dust from being "blown over" communities.

9.    In the late 1960s, effects later attributed to the Smelter began to appear.  A group of farmers started noticing unhealthy, barely harvestable crops and workers began to complain of breathing abnormalities.  The Defendants compensated the farmers for their damaged crops, but they failed to take any action to address the harm already inflicted upon the rest of Blackwell or to prevent the continued contamination of the community.

10.   Unwilling to make the necessary expenditures for pollution control equipment, Blackwell Zinc Company focused on its bottom line, disregarded the citizens of Blackwell and made the decision to shut down the Smelter.  Accordingly, instead of updating the plant and preserving the livelihood of Blackwell, Defendants began the process of closing the Smelter in 1972, and completely dismantled the facility by 1974.  After fifty-eight years of continuous operation the Smelter was gone.  Defendants left behind an environmental nightmare that still

haunts Blackwell residents, both past and present. Defendants' facility, which once defined an entire community, generating both opportunity and pride, now serves only as a reminder of Defendants' corporate greed, abandonment and deception.

11.     In 1974, after closing and razing the Smelter, Blackwell Zinc Company deeded the Smelter site to the Blackwell Industrial Authority ("BIA"), a public trust of the State of Oklahoma whose sole beneficiary is the City of Blackwell. Since 1974, the BIA has been entrusted with the responsibility of financing, operating, constructing and administering any public works, improvements or facilities on the property that once housed the Smelter. Between 1974 and 1992, the BIA developed the Smelter site as an industrial park, which resulted in the selling and leasing of various portions of the property. As the property was sold and leased, commercial construction activities occurred without controls to prevent the contaminated soil, dust and other material from further spreading throughout the city.

12.     In 1992, the United States Environmental Protection Agency ("EPA") suggested Blackwell would be a Superfund site and be placed on the National Priorities List (NPL) if investigation and remedial efforts did not ensue. Thereafter, the Blackwell Zinc Company, the BIA and the City of Blackwell entered into a Consent Agreement and Final Order (the "1992 CAFO") with the Oklahoma Department of Health.[2] The 1992 CAFO required Blackwell Zinc Company and the BIA to characterize and remediate the environmental contamination at the old Smelter site and on city property. Significantly, the 1992 CAFO's remediation plan did not include and was not applicable to private property owned by the residents of Blackwell.

13.     In 1994, in an effort to keep Blackwell off of the NPL, the ODEQ and the EPA entered into a Memorandum of Understanding (the "1994 MOU") that obligated the ODEQ to

---

[2] The Oklahoma Department of Health was the predecessor to the Oklahoma Department of Environmental Quality ("ODEQ").

ensure that the environmental characterization and remediation work conducted at the Smelter site was conducted in a manner consistent with the EPA's Superfund program.

14.     Pursuant to the 1992 CAFO the 1994 MOU, Cyprus Amax,[3] on behalf of Blackwell Zinc Company, performed environmental investigations and purported "remedial" actions on and about the Smelter site under the ODEQ's supervision. Among other things, zinc and cadmium were found in the soils at the Smelter site and were further found to be infiltrating area groundwater. After a series of negotiations and attendant delays, several consent orders were entered and purported "remedial" efforts ensued to address the soil and water contamination, as well as certain ecological concerns. These "remedial efforts" were not binding on private citizens; nor did they help private citizens. Indeed, none of Defendants' purported "remediation efforts" were effective or comprehensive. In fact, Defendants' investigation and attempted remediation has been and continues to be nothing more than a sham designed to deceive the citizens of Blackwell. The testing protocols and threshold clean up levels employed by Defendants are designed to minimize findings of contamination, wholly fail to investigate contamination inside residents' homes, and turn a blind eye to well-established and widely accepted benchmarks, such as those adopted and endorsed by the EPA.[4]

15.     The deadly, dangerous substances generated through Defendants' negligent operation of the Smelter have been and continue to be a source of harm to the properties and individuals living in and around Blackwell. This contamination contains and has continuously released into the community a variety of harmful and damaging substances, including zinc,

---

[3] In 1993, Blackwell Zinc Company's parent company, Defendant Amax, merged with Defendant Cyprus Minerals Company to create Defendant Cyprus Amax Minerals Company ("Cyprus Amax").
[4] The Defendants and the ODEQ agreed to a contamination threshold of 750 parts per million (ppm) for lead in soil. However, even under lax EPA standards, a concentration greater than 400 ppm is a soil-lead hazard in areas where children play. Defendants' testing protocol did nothing to determine whether the areas sampled are play areas where children under the age of six are likely to frequent. This omission is particularly disturbing in light of the fact that the Oklahoma Department of Health has determined that 1 in 3 Blackwell children have blood lead levels that are sufficient to cause brain damage.

arsenic, lead and cadmium.  These dangerous substances have contaminated and continue to contaminate private property, thereby limiting its use, diminishing its value and posing severe health threats to Plaintiffs.

16.     The deadly, dangerous substances emitted by the Smelter – zinc, arsenic, lead and cadmium – possess no inherent warning properties that would alert a reasonable person to their presence.  Each such contaminant is invisible, odorless and tasteless.  The presence of these deadly toxins could not and cannot be detected without highly technical and expensive scientific testing.  As such, Plaintiffs were unaware that Defendants were exposing Plaintiffs' persons and properties to these dangerous compounds.  A reasonable person could not have known, despite all manner of diligence, of the presence of these poisons.

17.     The manner in which Defendants operated, closed, cleaned-up and purportedly "remediated" the Smelter site was woefully inadequate and further jeopardized the safety and welfare of all individuals residing in and around Blackwell.  Such senseless conduct on the part of Defendants has caused and continues to cause irreparable damage to the property and health of Plaintiffs.  These damages are exponentially exacerbated by Defendants' ongoing refusal to properly remediate the contamination caused through their operation of the Smelter and by their inadequate remediation and improper management of the Smelter site since its closing in 1974.

18.  Additionally, the BIA was and is charged with the responsibility of financing, operating, constructing and administering any public works, improvements or facilities on the Smelter property, and accordingly owed and continues to owe residents a duty to exercise reasonable and ordinary care with respect to these ministerial and operational functions. As owner of the former Smelter property since 1974, the BIA has been and continues to be in a position to prevent further contamination of the City of Blackwell. The BIA, however, has taken

Plaintiffs' Original Petition

no action to prevent such ongoing contamination.  In fact, the BIA's conduct at the former Smelter site has only increased the degree of contamination in the City of Blackwell and the surrounding communities.

19.    Making matters worse and Defendants' conduct even more egregious, Defendants have actively engaged in a campaign of deception and cover-up designed to mislead the residents of Blackwell into believing that these deadly, dangerous substances have presented and continue to present no threat to them or to their community.

20.    There is widespread zinc, arsenic, lead and cadmium contamination to the exterior and interior of homes throughout Blackwell as a result of Defendants' wrongful acts.

21.    As a result of Defendants' dangerous and unlawful conduct, wind erosion and other airborne and waterborne releases from the Smelter facility have spread Defendants' contaminants throughout the town.  The deadly, dangerous substances released from the facility were and are transported by wind and other natural processes onto and into the homes, properties and persons of Blackwell.  Furthermore, soil, dirt, sand, slag, "connies" and other materials were sold or given to the City of Blackwell and area residents for use as landfill, the construction of roads, driveways, parking lots, the Blackwell High School running track, and a multitude of other applications.  In addition, once in the soils of Blackwell, contamination is continuously brought into homes, schools and places of business.

22.    As a proximate result of Defendants' conduct, Plaintiffs and others similarly situated have suffered and will continue to suffer significant decreases in their property values. Blackwell residents selling their homes are required to disclose the existence of zinc, arsenic, lead, and/or cadmium contamination to any potential buyer in accordance with 60 Okla. Stat. § 833(B)(1)(g).  Should a seller fail to disclose the existence of any of these deadly, dangerous

substances, he or she would be liable for any actual damages, attorneys' fees and/or court costs incurred by the purchaser and the seller's agent would be subject to a fine of up to $2,000.00. Plaintiffs and others similarly situated have been further damaged as a result of Defendants' unlawful and negligent conduct because they have lost the ability to fully use and enjoy the properties upon which they live or own.

23.     Remedial measures are available to properly and permanently clean up the properties of Blackwell residents. Although charged with the responsibility of taking such remedial action, Defendants have failed to employ the protocols necessary to ensure that the dangerous toxins located on and in the properties of Plaintiffs are properly and permanently abated.

24.     Zinc, arsenic, lead, and cadmium from the Smelter also have contaminated nearby bodies of water and groundwater. The toxic materials have washed and continue to wash into the Chikaskia River and other bodies of water and low-lying areas, as well as onto community trails, sidewalks, rights-of-way, parks and playgrounds. Acknowledging that their conduct has contaminated the groundwater in and around Blackwell, Defendants have proposed the construction of a water treatment facility to extract harmful zinc and cadmium compounds from the groundwater. Unfortunately, however, Plaintiffs are precluded in the interim from using and enjoying their groundwater – groundwater that is plentiful and easily accessible – for many years, possibly decades. To add insult to injury, Defendants plan to profit from this water treatment facility. Zinc and cadmium removed from the groundwater would be refined and sold by Defendants or their agents. Plaintiffs seek equitable relief in the form of a constructive trust to capture all proceeds that would be generated by the water treatment plant proposed by Defendants and require that all such proceeds be used to remediate contaminated properties

within the Blackwell community and/or fund a medical monitoring trust fund. It is unjust and inequitable for Defendants to continue to reap profits on the backs of the citizens of Blackwell while refusing to do what is necessary to cleanup the town they have poisoned.

25.     In addition to the diminished value, and loss of the use and enjoyment of their property as a proximate result of Defendants' conduct, these deadly, dangerous contaminants have significantly increased the risk of Plaintiffs contracting long-term mental and behavioral problems, learning disabilities and life-altering, potentially fatal, illnesses. These potentially life-threatening and latent diseases make it reasonably necessary for Plaintiffs to undergo periodic diagnostic medical examinations otherwise unnecessary had Defendants not subjected them to the deadly, dangerous substances.

26.     Exposure to arsenic can result in severe gastrointestinal toxicity, peripheral nervous system neuropathy, anemia, hyper-pigmentation, skin lesions, vascular disease, headaches, lassitude, weakness, respiratory ailments, and vision impairment. Arsenic is also associated with liver and kidney injury, disturbances of the central nervous system, and an increased risk of cancer of the lungs, skin, kidney, liver, and bladder. The National Toxicology Program, the International Agency for Research on Cancer and the EPA's Integrated Risk Information System classify arsenic as a known human carcinogen.

27.     Exposure to lead can result in damage to the brain and central nervous system, peripheral nervous system, kidneys and hematopoietic system. Anemia is an early manifestation of lead poisoning due to the inhibition of hemoglobin synthesis and a reduction in the life span of circulating red blood cells. Lead exposure can lead to kidney damage and possible kidney failure, fine motor nerve damage, bone damage, hypertension, lead encephalopathy, memory loss, and permanent brain damage. Lead exposure can also have neurological and psychological

effects.  Lead is classified as a <u>probable human carcinogen</u> by the International Agency for Research on Cancer and the EPA's Integrated Risk Information System, and as a <u>reasonably anticipated human carcinogen</u> by the National Toxicology Program.

28.     Of paramount concern is the effect of lead exposure on children.  Exposure to lead can have a wide range of effects on a child's development and behavior. Children are at an increased risk for greater lead exposure.  Children under the age of six are especially vulnerable to lead's harmful health effects as their brains and central nervous system are still developing. For young children, even very low levels of exposure can result in reduced IQ, learning disabilities, attention deficit disorders, behavioral problems, stunted growth, impaired hearing, and kidney damage.  At high levels of exposure, a child may become mentally retarded, suffer permanent brain damage, fall into a coma, and even die from lead poisoning.

29.     Exposure to cadmium can result in an increased risk of lung disease, death due to heart-related problems and serious effects on the kidney, including but not limited to kidney cancer. Cadmium has a long biological half-life in humans.  Cadmium is classified as a <u>known human carcinogen</u> by the National Toxicology Program, a human carcinogen by the International Agency for Research on Cancer and a <u>probable human carcinogen</u> by the EPA's Integrated Risk Information System.

30.     Exposure to zinc can lead to the development of metal fume fever and copper deficiency, as well as altered iron function, reduced immune function and reduced levels of high-density lipoproteins.  The most prominent respiratory effects of zinc exposure are substernal chest pain, cough and dyspnea, while reduced lung volumes and a decreased diffusing capacity of carbon monoxide characterize the impairment of pulmonary function.

31.    Accordingly, Plaintiffs bring this action for legal damages and equitable relief that would fully and finally facilitate a proper and permanent cleanup of Blackwell. Furthermore, Plaintiffs seek the creation of a medical monitoring trust fund for the proposed Plaintiff class to assist in the early detection of chronic or long-term health effects. Monitoring procedures exist that make the early detection of these diseases possible and early detection is beneficial to the treatment, prevention and remission of these diseases. Plaintiffs and others similarly situated have no adequate remedy at law, and the establishment of a court-supervised medical monitoring trust fund is reasonably necessary and highly appropriate. In addition, Plaintiffs seek equitable relief in the form of a constructive trust to capture all proceeds that will be generated by virtue of the water treatment plant proposed to be installed by Defendants and request that all such proceeds be used to fund the aforementioned medical monitoring trust fund and/or remediate contaminated properties within the Blackwell community.

32.    Plaintiffs assert their claims under state common law for legal and equitable relief related to and resulting from widespread contamination of the land located in and around Blackwell with deadly, dangerous substances, which was caused by Defendants' creation, sustainment and cover-up of the public nuisance in Blackwell.

33.    As a result of the Defendants' unlawful and negligent conduct, including their harmful, careless and dangerous operation, closure, "cleanup" and purported "remediation" of the Smelter, Plaintiffs' health, safety, welfare and property have been damaged. The Defendants have and continue to place money above any concern for the health and property of the residents of Blackwell. The toll of human misery from the effects of exposure to these deadly, dangerous substances has not been sufficient to deter the Defendants from a campaign of misinformation and denial regarding the dangerousness and severity of the conditions existing in Blackwell.

Accordingly, this lawsuit seeks to have the Defendants' liability to the citizens of Blackwell, both past and present, judicially adjudicated and to restore the City still proudly referred to by its own as "America's Hometown."

### III. Jurisdiction

34.     This is a class action lawsuit seeking monetary damages and equitable relief pursuant to Oklahoma Statute 12 § 2023. Plaintiffs seek to certify a class of Plaintiffs who are currently citizens of Oklahoma.

35.     This Court has personal jurisdiction over Defendants by virtue of the extensive amount of business they conduct(ed) within this state and, further, because of the specific conduct at issue occurred in the State of Oklahoma. Specifically, each Defendant's conduct resulted in the release of deadly, dangerous substances from the Smelter and/or Smelter site. Millions of pounds of waste materials generated from primary and secondary zinc production and related processes at the Smelter were distributed throughout the community by the Smelter stack and fugitive sources at the Smelter. Additionally, this toxic waste was used throughout the community for a multitude of different purposes, including, but not limited to, use as landfill and for the construction of roads, driveways, parking lots, and the Blackwell High School track.

36.     The Defendants are amenable to service under the Oklahoma long-arm statute. The exercise of personal jurisdiction over Defendants does not offend traditional notions of fair play and substantial justice. Defendants have established minimum contacts with the State of Oklahoma. Defendants have purposefully availed themselves of the privilege of conducting activities within the State of Oklahoma, thereby invoking the benefits and protections of its laws.

37.     There is no federal jurisdiction over this case. Specifically, the federal courts lack jurisdiction and removal would be improper because:

a.      greater than two-thirds of the members of the proposed Plaintiff class in the aggregate are citizens of the State of Oklahoma wherein this original action is filed. Indeed, the proposed Plaintiff class includes **only** citizens of the State of Oklahoma who are currently domiciled in the State of Oklahoma; and

b.      more than one Defendant, Blackwell Zinc Company, Inc. and the Blackwell Industrial Authority, are Defendants (1) from whom significant relief is sought by members of the Plaintiff class; (2) whose alleged conduct forms a significant basis for the claims asserted by the proposed Plaintiff class; and (3) who are citizens of the State of Oklahoma wherein this original action is filed;

**i.    Blackwell Industrial Authority**

A.      The members of the proposed Plaintiff class seek significant relief from the BIA, a public trust of the State of Oklahoma, as it is the current owner/trustee of the land on which the former Smelter was located. Because proper remediation of the entire community is needed to prevent continued contamination of the City of Blackwell, any relief would be incomplete and inadequate to protect the health and property of Plaintiffs without cleaning up the property owned by the BIA – property that is an original and continuing significant source of contamination. For this reason, the BIA is a primary Defendant from whom Plaintiffs seek significant relief as it is liable to Plaintiffs through its acts and omissions in discharging its operational and ministerial functions, as set forth more fully below. Furthermore, as a successive owner

of property who has neglected to abate a continuing nuisance upon the former Smelter site, the BIA is liable in the same manner as all other Defendants pursuant to 50 Okla. Stat. § 5.

B.    BIA's conduct forms a significant basis for the claims asserted by the proposed Plaintiff class in that its conduct resulted, and continues to result, in the citizens of Blackwell being exposed to harmful contaminants due to its failure to properly discharge its operational and ministerial functions at the former Smelter site – namely its management and oversight of the property itself and the activities conducted thereon.

C.    BIA is a citizen of the State of Oklahoma as its principal place of business is Blackwell, Kay County, Oklahoma.

ii.    **Blackwell Zinc Company, Inc.**

A.    The members of the proposed Plaintiff class seek significant relief from Blackwell Zinc Company, Inc. as it was the owner and operator of the Smelter at all times relevant to Plaintiffs' claims. As the owner/operator of the Smelter, Blackwell Zinc Company, Inc. is directly responsible and liable to Plaintiffs through its acts and omissions, as set forth more fully below.

B.    Blackwell Zinc Company, Inc.'s conduct forms a significant basis for the claims asserted by the proposed Plaintiff class in that its conduct resulted, and continues to result, in the dissemination of

harmful contaminants—zinc, arsenic, lead and cadmium—into the community.

C.   Blackwell Zinc Company, Inc. is a citizen of the State of Oklahoma in that the State of Oklahoma is its principal place of business as Oklahoma was the last place Blackwell Zinc Company, Inc. conducted any business activity. Blackwell Zinc Company, Inc. is a corporation that has conducted no activity in any other state or foreign country since the Smelter was closed and dismantled.

c.   all of the principle injuries resulting from the alleged conduct or any related conduct of each Defendant were incurred in the State of Oklahoma where this action is filed; and

i.   all property damage alleged by the proposed Plaintiff class occurred or will occur as a result of ownership of real property in Kay County, Oklahoma; therefore, **all** damages resulting from the alleged conduct of each Defendant necessarily were or will be incurred in the State of Oklahoma; and

ii.   all medical monitoring damages alleged by the proposed Plaintiff class result from exposure to contaminants in Blackwell, Kay County, Oklahoma; therefore, **all** damages result from the alleged conduct of each Defendant in the State of Oklahoma.

d.      during the three-year period preceding the filing of this class action, no other class
action has been filed asserting the same or similar factual allegations against any
of the Defendants on behalf of the same or other persons.

38.     Furthermore, federal jurisdiction does not exist pursuant to 28 U.S.C. §1332(a)
because the requirement of complete diversity is lacking. As stated above, both Blackwell Zinc
Company, Inc. and Blackwell Industrial Authority are domiciled in the State of Oklahoma.
Because the proposed Plaintiff class consists only of Oklahoma citizens, federal jurisdiction
cannot be achieved.

39.     Plaintiffs will oppose any improper attempt to remove this case to federal court,
and will seek costs, fees and sanctions for such action.

## IV. Venue

40.     Venue is proper in Kay County, Oklahoma as to all Defendants under 12 Okla.
Stat. § 131 because this suit involves claims for damage to land(s) situated within Kay County,
Oklahoma.

41.     Venue is proper in Kay County, Oklahoma as to Defendant Blackwell Zinc
Company under 12 Okla. Stat. § 139 because Defendant Blackwell Zinc Company resides in Kay
County, Oklahoma and because Defendant Blackwell Zinc Company resided in Kay County,
Oklahoma at the time Plaintiffs' claims arose.

42.     Venue is proper in Kay County, Oklahoma as to Defendant BIA under 12 Okla.
Stat. § 139 because Defendant BIA resides in Kay County, Oklahoma and because Defendant
BIA resided in Kay County, Oklahoma at the time Plaintiffs' claims arose.

43.     Venue is proper in Kay County, Oklahoma as to Defendants Phelps Dodge
Corporation, Freeport-McMoRan Copper & Gold Inc., Amax, Cyprus Amax and BNSF Railway

Company under 12 Okla. Stat. § 137 because co-defendants Blackwell Zinc Company and BIA, both residents of Kay County, Oklahoma, may properly be sued in Kay County, Oklahoma.

## V. Parties

44.     Plaintiff BOB COFFEY is a natural person who resides in Blackwell, Kay County, Oklahoma.

45.     Plaintiff LORETTA CORN is a natural person who resides in Blackwell, Kay County, Oklahoma.

46.     Plaintiffs LARRY AND MARY ELLEN JONES are natural persons who reside in Blackwell, Kay County, Oklahoma.

47.     Defendant FREEPORT-MCMORAN COPPER & GOLD INC. (hereinafter "Freeport-McMoRan"), a foreign corporation organized and existing under the laws of the State of Delaware, whose principal office is located at One North Central Avenue, Phoenix, Arizona 85004, independently and as alter ego of Defendant Blackwell Zinc Company, is authorized to do business in Oklahoma and may be served with process by serving its registered agent for service of process, the Oklahoma Secretary of State, at 2300 North Lincoln Boulevard, Room 101, Oklahoma City, Oklahoma 73105-4897.   Defendant Freeport-McMoRan acquired Defendant Phelps Dodge in March 2007, at which time Defendant Phelps Dodge became a wholly-owned subsidiary of Defendant Freeport-McMoRan.

48.     Defendant PHELPS DODGE CORPORATION (hereinafter "Phelps Dodge"), a foreign corporation organized and existing under the laws of the State of New York, whose principal office is located at One North Central Avenue, Phoenix, Arizona 85004-4416, independently and as alter ego of Defendant Blackwell Zinc Company, may be served with process by serving its registered agent for service of process, CT Corporation System, at 111

Eighth Avenue, New York, New York 10011. Defendant Phelps Dodge acquired Defendant Cyprus Amax in 1999, at which time Defendant Blackwell Zinc Company became a wholly-owned subsidiary of Phelps Dodge.

49.     Defendant CYPRUS AMAX MINERALS COMPANY (hereinafter "Cyprus Amax), a foreign corporation organized and existing under the laws of the State of Delaware, whose principal office is located at One North Central Avenue, Phoenix, Arizona 85004, independently and as alter ego of Defendant Blackwell Zinc Company, may be served with process by serving its registered agent for service of process, CT Corporation System, at 2394 East Camelback Road, Phoenix, Arizona 85016. Defendant Cyprus Amax was established through the merger of Cyprus Minerals Company and Amax. Defendant Blackwell Zinc Company was a wholly-owned subsidiary of Defendant Amax.

50.     Defendant AMAX, INC., f/k/a American Metal Climax, Inc. f/k/a The American Metal Company (hereinafter "Amax"), independently and as alter ego of Defendant Blackwell Zinc Company, may be served with process by serving its successor-in-interest, Defendant CYPRUS AMAX MINERALS COMPANY, who may be served with process by serving its registered agent for service of process, CT Corporation System, at 2394 East Camelback Road, Phoenix, Arizona 85016. Defendant Cyprus Amax Minerals Company was established through the merger of Cyprus Minerals Company and Amax. Defendant Blackwell Zinc Company was a wholly-owned subsidiary of Defendant Amax and at all times relevant hereto, Defendant Amax was the alter ego of Defendant Blackwell Zinc Company in that it exercised complete control over Defendant Blackwell Zinc Company including but not limited to its finances, policies and business practices, as well as 100 percent ownership of Defendant Blackwell Zinc Company's outstanding stock.

51.    Defendant BLACKWELL ZINC COMPANY, INC. (hereinafter "Blackwell Zinc Company"), a corporation organized and existing under the laws of the State of New York, whose principal place of business for the purpose of determining diversity jurisdiction is Blackwell, Kay County, Oklahoma, as this is the place it last transacted business, is authorized to do business in Oklahoma, and may be served with process by serving its registered agent for service of process, The Corporation Company, at 735 First National Building, Oklahoma City, Oklahoma 73102.    Defendant Blackwell Zinc Company is a wholly-owned subsidiary of Defendant Phelps Dodge Corporation, which is a wholly-owned subsidiary of Defendant Freeport-McMoRan Copper & Gold Inc.

52.    Defendant BLACKWELL INDUSTRIAL AUTHORITY (hereinafter "BIA"), a public trust organized and existing under the laws of the State of Oklahoma, whose principal place of business is located in Blackwell, Kay County, Oklahoma, and may be served with process by serving its executive director, Shane Frye, at P.O. Box 150, Blackwell, Oklahoma 74631.

53.    Defendant BNSF RAILWAY COMPANY (hereinafter "BNSF Railway") f/k/a Burlington Northern Inc. f/k/a Burlington Northern Railroad Company f/k/a The Burlington Northern and Santa Fe Railway Company, a foreign corporation organized and existing under the laws of the State of Delaware, whose principal office is located at 2650 Lou Menk Drive, Fort Worth, Texas 76131-2830, is authorized to do business in Oklahoma and may be served with process by serving its registered agent for service of process, The Corporation Company, at 735 First National Building, Oklahoma City, Oklahoma 73102.

54.    Plaintiffs seek to certify two Classes of similarly situated persons defined as follows:

a.    Oklahoma citizens currently domiciled in the State of Oklahoma who own private real property in the City of Blackwell, Kay County, Oklahoma, or within a five-mile radius of the Smelter site; and

b.    Oklahoma citizens domiciled in the State of Oklahoma who reside, or who at any time after January 1, 1916 have resided, on real property located in the City of Blackwell, Kay County, Oklahoma, or within a five-mile radius of the Smelter site.

55.    Private real property lying within the City of Blackwell or within a five-mile radius of the Smelter site has been impacted by the release of hazardous substances at or from the Smelter.

56.    Excluded from the Class are Defendants and any entity in which any Defendant has a controlling interest, any current employees, officers, or directors of any Defendant, and the legal representatives, successors and assigns of any Defendant, as well as the State of Oklahoma and/or any political subdivisions thereof. Also excluded from the definition of the class are those individuals who participated as plaintiffs in Cause No. C-73-21; *Glenny, et al. v. Blackwell Zinc Company, Inc., et al.;* In the District Court of Kay County, Oklahoma and/or Cause No. CJ-95-482; *Miller v. Blackwell Zinc Company, Inc.;* In the District Court of Kay County, Oklahoma

57.    To the extent the below counts seek legal relief, such counts relate only to private real property owners who are Oklahoma citizens domiciled in the State of Oklahoma. To the extent the below counts seek equitable relief, they relate to all past and present residents who reside, or who at any time after January 1, 1916 have resided, on real property located in the City of Blackwell, Kay County, Oklahoma, or any other real property located within a five-mile radius of the former Smelter – whether or not they are private real property owners – and who

are Oklahoma citizens domiciled in the State of Oklahoma.  This action <u>does not</u> seek damages for personal injuries.

### VI.  Plaintiffs' Causes of Action

#### A. Plaintiffs Invoke the Discovery Rule

58.    At all material times relevant to the herein enumerated causes of action, Defendants Blackwell Zinc Company, Amax, Cyprus Amax, Phelps Dodge, Freeport-McMoRan and BNSF Railway concealed from Plaintiffs vital information concerning the harmful effects resulting from the operation of the Smelter.  Plaintiffs, therefore, invoke the "discovery rule." Additionally, the public nuisance created by Defendants is ongoing and continuous to this day and, pursuant to 50 Okla. Stat. § 7, no lapse of time can legalize such a public nuisance because the nuisance amounts to an actual obstruction of a public right.

59.    Specifically, Defendants Blackwell Zinc Company, Amax, Cyprus Amax, Phelps Dodge, Freeport-McMoRan and BNSF Railway had information and/or knowledge that would have reasonably supported the conclusion that their operations in and around the Smelter posed a severe threat to real property and individuals, including Plaintiffs, exposed to its harmful byproducts.

60.    Defendants Blackwell Zinc Company, Amax, Cyprus Amax, Phelps Dodge, Freeport-McMoRan and BNSF Railway had knowledge that the byproducts generated through their operation of the Smelter contained deadly, dangerous compounds unfit for human exposure and/or ingestion.  As mentioned *supra*, in 1939 the smelting industry recognized that dust emissions were a "nuisance," a "constant source of agitation and discontent," a "hazard" and that steps were needed to prevent the toxic dust from being "blown over" communities.

61.     At the very latest, Defendants had knowledge that the byproducts generated through their operation of the Smelter contained dangerous compounds unfit for human exposure and/or ingestion in 1973 when a group of area farmers brought suit against them for property damage. That case, *Ray L. Glenny v. American Metal Climax, Inc.*, included allegations that lead, arsenic and cadmium emitted from the Smelter had and were contaminating Plaintiffs' property. Notably, after settling their dispute with the farmers for millions of dollars, Defendants waited 20 years to begin any remedial efforts. Even then, the remediation was conducted only because Defendants were forced to do so by state and federal environmental regulators. Making matters worse, the cleanup conducted to date has been shoddy at best. Defendants have negotiated elevated remedial threshold levels to limit the amount of remediation required and have consistently failed to employ recognized protocols with respect to the minimal remediation performed. Whether Defendants' purported "cleanup" complies with standards imposed upon it by the EPA or the ODEQ is of no moment; Defendants' actions have created a nuisance and unreasonable danger that is actionable at common law.

62.     Defendants' conscious concealment of these known facts is misconduct that was and is a proximate and/or producing cause of the Plaintiffs' damages. Each of these acts and/or omissions, as well as other overt acts of commission, was done for the purpose of persuading the general public that operation of the Smelter was safe and/or for the purpose of hiding the dangerous and harmful effects resulting from its operation.

63.     Because Defendants concealed the dangers associated with and attendant to their conduct, Plaintiffs did not know, nor should they have known, of their damages. In fact, Defendants' concealment of the dangers associated with their operation of the Smelter and resulting contamination of the community continues to this day. After opening an office in the

City of Blackwell in 2006, Defendant Phelps Dodge has actively engaged in a campaign of misinformation and denial regarding the dangerousness and severity of the conditions existing in Blackwell. This propaganda campaign has been nothing more than a continued effort by Defendants to conceal the devastation caused by their conduct. As stated above, the deadly, dangerous substances emitted by the Smelter – zinc, arsenic, lead and cadmium – possess no inherent warning properties that would alert a reasonable person to their presence. Each such contaminant is invisible, odorless and tasteless. The presence of these deadly toxins could not and cannot be detected without highly technical and expensive scientific testing. As such, Plaintiffs were unaware that their persons and properties were being exposed to and contaminated by these dangerous compounds. A reasonable person could not have known, despite all manner of diligence, of the presence of these poisons.

64.     In the factual allegations and counts in this Petition, Plaintiffs assert claims under state law for property damages and medical monitoring that proximately result from the toxic and deadly substances emitted from the Smelter. If the commencement date for any of Plaintiffs' state law claims is earlier than the federally required commencement date provided in 42 U.S.C. § 9658(1), the federally required commencement date governs Plaintiffs' claims.

### B. Count One – Nuisance

65.     Plaintiffs incorporate herein the foregoing allegations of this Petition and further allege as follows:

66.     As a result of their creation and cover-up of the harmful waste products, Defendants Blackwell Zinc Company, Amax, Cyprus Amax, Phelps Dodge, Freeport-McMoRan, BNSF Railway and the BIA have caused an unreasonable invasion of, interference with and impairment of Plaintiffs' beneficial use and enjoyment of their property, thereby causing

Plaintiffs inconvenience, annoyance, impairment of use, interference with enjoyment, and other injury. This unreasonable invasion of, interference with and impairment of Plaintiffs beneficial use and enjoyment of their property continues to this day.

67.     Additionally, as a result of their creation and cover-up of the deadly, dangerous waste products, Defendants' wrongful conduct has caused unreasonable and substantial danger to the Plaintiffs' health, safety and welfare. Said acts and omissions render Plaintiffs insecure in life and in the use of property, such nuisance further being one that has affected and now affects an entire community and a considerable number of persons. This unreasonable and substantial danger to Plaintiffs' health, safety and welfare by Defendants continues to this day.

68.     Such conduct thereby constitutes a private and public nuisance under 50 Okla. Stat. §§ 1-3. The nuisance and injuries caused thereby are substantial, tangible, continuing and both temporary and permanent. The continuation of such conduct threatens irreparable harm to Plaintiffs property and persons.

69.     Furthermore, Defendants are, have been and/or continue to be successive owners of the property in question and each has neglected to abate the continuing nuisance. As such, pursuant to 50 Okla. Stat. § 5, each Defendant is liable for this nuisance in the same manner as the one who first created the nuisance.

70.     Specifically, the zinc, cadmium, arsenic, and lead-laden dust left behind by Defendants constitute a public nuisance for which Defendants are jointly and severally liable. Plaintiffs' persons and properties have been poisoned by the zinc, cadmium, arsenic, and lead-laden dust generated by Defendants' operations. Therefore, Defendants' actions have been specially injurious to Plaintiffs.

71.     The existence of the zinc, cadmium, arsenic and lead-laden dust poses a serious risk to the health, safety and welfare of Plaintiffs as well as others and will continue to pose such a risk until the nuisance is properly and permanently abated.   The existence of the zinc, cadmium, arsenic and lead-laden dust further poses a serious risk to the property of Plaintiffs as well as others, rendering it less useful and/or decreasing its value, and will continue to pose such a risk until such time as the nuisance is **properly** and **permanently** abated.

72.     The above stated acts of Defendants constitute a public nuisance *per se* pursuant to 27A Okla. Stat. § 2-6-105, as Defendants have caused and continue to cause air, land and/or water of the State of Oklahoma to be polluted.  Accordingly, Plaintiffs are entitled to equitable relief including, but not limited to, an injunction requiring Defendants to remediate all contaminated properties, including the properties of Plaintiffs, and to pay all costs associated with quantifying the amount of remediation and natural-resource damages as well as the amount of natural-resource damage itself.  Plaintiffs are further entitled to equitable relief in the form of a court-supervised medical monitoring program funded by Defendants.

73.     By reason of the foregoing conduct of Defendants, Plaintiffs have and will incur damages, including special and direct damages, costs and expenses as a result of the nuisance for which they are entitled to receive compensation and reimbursement from Defendants jointly and severally.

74.     Further, and in the alternative, as a result of Defendants negligent or willful injury to Plaintiffs' property, Plaintiffs are entitled to reasonable attorneys' fees, court costs and interest pursuant to 12 Okla. Stat. § 940.

A.    The acts or omissions of Defendants Blackwell Zinc Company, Amax, Cyprus Amax, Phelps Dodge, and Freeport-McMoRan were committed intentionally, or at the very least negligently, and include, but are not limited to, the following:

1.    failing to operate the Smelter in such a manner as to protect the safety, health, welfare, and property of those living in and around Blackwell, Kay County, Oklahoma, including Plaintiffs herein;

2.    failing to properly and safely handle, manage and/or store the harmful waste generated through operation of the Smelter in such a manner as to protect the safety, health, welfare, and property of those living in and around Blackwell, Kay County, Oklahoma, including Plaintiffs herein;

3.    failing to properly remove and/or dispose of the harmful waste generated through operation of the Smelter in such a manner as to protect the safety, health, welfare, and property of those living in and around Blackwell, Kay County, Oklahoma, including Plaintiffs herein;

4.    failing to close and cleanup the Smelter in such a manner as to protect the safety, health, welfare, and property of those living in and around Blackwell, Kay County, Oklahoma, including Plaintiffs herein;

5.    failing to abate the harmful substances generated through operation of the Smelter, thereby jeopardizing the safety, health, welfare, and property of those living in and around Blackwell, Kay County, Oklahoma, including Plaintiffs herein;

6.    failing to ensure proper containment of the harmful waste generated through operation of the Smelter, thereby jeopardizing the safety, health, welfare, and property of those living in and around Blackwell, Kay County, Oklahoma, including Plaintiffs herein;

7.    depositing and/or allowing to be deposited harmful contaminants in and on properties located in and around Blackwell, Kay County, Oklahoma, including properties owned and/or occupied by Plaintiffs herein;

8.    distributing and/or making available to the public, including Plaintiffs herein, the harmful waste materials generated through operation of the Smelter;

9.    failing to warn of and/or make known to the public, including Plaintiffs herein, the dangers associated with operation of the Smelter;

10. failing to warn of and/or make known to the public, including Plaintiffs herein, the dangers associated with exposure to and/or ingestion of the harmful waste materials generated through operation of the Smelter;

11. failing to cooperate with City and State officials in the investigation and testing of soils located on properties in and around Blackwell, Kay County, Oklahoma, including properties owned and/or occupied by Plaintiffs herein;

12. failing to employ recognized and/or accepted protocols and/or procedures in the investigation and testing of soils located on properties in and around Blackwell, Kay County, Oklahoma, including properties owned and/or occupied by Plaintiffs herein;

13. failing to investigate, evaluate and/or test contamination levels inside the homes in and around Blackwell, Kay County, Oklahoma, including homes owned and/or occupied by Plaintiffs herein;

14. failing to employ recognized and/or accepted protocols and/or procedures in the attempted remediation of contaminated properties located in and around Blackwell, Kay County, Oklahoma, including properties owned and/or occupied by Plaintiffs herein; and

15. failing to employ and/or provide appropriate and/or qualified personnel and/or management in the attempted remediation of contaminated properties located in and around Blackwell, Kay County, Oklahoma, including properties owned and/or occupied by Plaintiffs herein.

B. The acts or omissions of Defendant BIA were committed negligently, and include, but are not limited to, the following:

1. failing to abate the harmful substances located on the former Smelter property;

2. failing to ensure containment of the harmful substances located on the former Smelter property;

3. depositing and/or allowing to be deposited harmful contaminants in and on properties located in and around Blackwell, Kay County, Oklahoma, including properties owned and/or occupied by Plaintiffs herein;

4. distributing and/or making available to the public, including Plaintiffs herein, the harmful waste materials located at the former Smelter property;

5.     failing to warn of and/or make known to the public, including Plaintiffs herein, the dangers associated with the use and application of the harmful waste materials from the former Smelter property;

6.     failing to warn of and/or make known to the public, including Plaintiffs herein, the dangers associated with exposure to and/or ingestion of the harmful waste materials from the former Smelter property;

7.     failing to cooperate with City and State officials in the investigation and testing of soils located on properties in and around Blackwell, Kay County, Oklahoma, including properties owned and/or occupied by Plaintiffs herein;

8.     failing to properly and adequately manage and/or supervise the activities occurring at the former Smelter property in such a manner as to prevent the release of deadly, dangerous substances into the City of Blackwell and surrounding communities, thereby jeopardizing the safety, health, welfare and property of those living in and around Blackwell, Kay County, Oklahoma, including Plaintiffs herein; and

9.     allowing activities and/or conduct to occur at the former Smelter property that resulted and continue to result in the release of hazardous substances and attendant widespread contamination of the City of Blackwell and surrounding communities, thereby jeopardizing the safety, health, welfare and property of those living in and around Blackwell, Kay County, Oklahoma, including Plaintiffs herein.

C.  The acts or omissions of Defendant BNSF Railway were committed intentionally, or

at the very least negligently, and include, but are not limited to, the following:

1.     failing to institute, implement and/or employ proper protocols and/or procedures to ensure containment of the hazardous materials it transported to and/or from the former Smelter property;

2.     depositing and/or allowing to be deposited harmful contaminants in and on properties located in and around Blackwell, Kay County, Oklahoma, including properties owned and/or occupied by Plaintiffs herein;

3.     failing to properly and adequately supervise and/or manage its operations occurring in and around the former Smelter property in such a manner as to prevent the release of toxic substances into the City of Blackwell and surrounding communities, thereby jeopardizing the safety, health, welfare and property of those living in and around Blackwell, Kay County, Oklahoma, including Plaintiffs herein; and

4.    failing to warn of and/or make known to the public, including Plaintiffs herein, the dangers associated with exposure to and/or ingestion of the hazardous materials it transported to and/or from the former Smelter property

75.    Additionally, the conduct of Defendants has been and continues to be willful, intentional, malicious, and/or with reckless disregard for the rights of others.

76.    The above-stated acts and/or omissions of Defendants were, and continue to be, a proximate and/or producing cause of the Plaintiffs' damages.

### C. Count Two – Trespass

77.    Plaintiffs incorporate herein the foregoing allegations of this Petition and further allege as follows:

78.    Defendants activities have resulted and continue to result in the release of deadly dangerous substances and have caused and will continue to cause an actual physical invasion of and interference with Plaintiffs' property interests. This actual and physical invasion of and interference with Plaintiffs' property is ongoing and continues to this day.

79.    Deadly, dangerous substances present on Plaintiffs' properties came from the Smelter and/or the former Smelter site and were and continue to be owned by and/or the responsibility of Defendants.

80.    Defendants have known that the toxic wastes deposited on Plaintiffs' property have resulted in or are substantially certain to result in an actual and physical invasion of or interference with Plaintiffs' property interests, and thus have continued their intentional and/or negligent conduct.

81.    This actual and physical invasion of and interference with Plaintiffs' properties have occurred and continues to occur without permission, authority or consent from Plaintiffs. The presence of these deadly contaminants constitutes a trespass under applicable state law.

82.     The trespass and damages caused thereby are substantial, tangible, continuing, both temporary and permanent, and threaten irreparable harm to Plaintiffs' persons and property.

83.     By reason of the foregoing conduct of Defendants, Plaintiffs are entitled to equitable relief, including but not limited to an injunction requiring Defendants to abate their dangerous conduct, remediate all contaminated properties and to pay all costs associated with quantifying the amount of remediation and natural-resource damages as well as the amount of natural-resource damage itself. Plaintiffs are further entitled to equitable relief in the form of a court-supervised medical monitoring program funded by Defendants.

84.     By reason of the foregoing conduct of Defendants, Plaintiffs have and will incur damages, including special and direct damages, costs and expenses as a result of the trespass for which they are entitled to receive compensation and reimbursement from Defendants jointly and severally.

85.     The conduct of Defendants has been and continues to be negligent. Additionally, the conduct of Defendants has been and continues to be willful, intentional, malicious, and/or with reckless disregard for the rights of others.

86.     As a result of Defendants' negligent or willful injury to Plaintiffs' property, Plaintiffs are further entitled to reasonable attorneys' fees, court costs and interest pursuant to 12 Okla. Stat. § 940.

87.     The above-stated acts and/or omissions of Defendants were and continue to be a proximate and/or producing cause of Plaintiffs' damages.

### D.  Count Three – Strict Liability for Ultra-Hazardous Activity

88.     Plaintiffs incorporate herein the foregoing allegations of this Petition and further allege as follows:

89.     Defendants Blackwell Zinc Company, Amax, Cyprus Amax, Phelps Dodge, and Freeport-McMoRan are strictly liable for their operation of the Smelter as said operation, as conducted, constituted an ultra-hazardous activity. Defendants Blackwell Zinc Company, Amax, Cyprus Amax, Phelps Dodge, and Freeport-McMoRan's activities were and are abnormally dangerous and Defendants are subject to liability for harm to Plaintiffs' persons and Plaintiffs' real property resulting from their ultra-hazardous activity, even if Defendants Blackwell Zinc Company, Amax, Cyprus Amax, Phelps Dodge, and Freeport-McMoRan exercised the utmost care to prevent such harm.

90.     Defendants Blackwell Zinc Company, Amax, Cyprus Amax, Phelps Dodge, and Freeport-McMoRan's handling, storage, management and attempted disposal of the waste generated by their operation of the Smelter has caused and continues to cause damage to Plaintiffs.

91.     Defendant BIA is strictly liable for its conduct at the former Smelter site, as such conduct constitutes an ultra-hazardous activity.  Defendant BIA's activities were and are abnormally dangerous and Defendant BIA is subject to liability for harm to Plaintiffs' persons and Plaintiffs' real property resulting from its ultra-hazardous activity, even if Defendant BIA exercised the utmost care to prevent such harm.

92.     Defendant BIA's mismanagement of the property has been and continues to be a significant source of contamination in the City of Blackwell and the surrounding communities and has caused and continues to cause damage to Plaintiffs.

93.     Defendant BNSF Railway is strictly liable for its operations in and around the City of Blackwell as said operations, as conducted, constituted an ultra-hazardous activity. Defendant BNSF Railway activities were and are abnormally dangerous and Defendant BNSF

Railway is subject to liability for harm to Plaintiffs' persons and Plaintiffs' real property resulting from their ultra-hazardous activity, even if Defendant BNSF Railway exercised the utmost care to prevent such harm.

94.     Defendant BNSF Railway's transportation and handling of dangerous and hazardous substances caused and continues to cause damage to Plaintiffs.

### E.  Count Four – Unjust Enrichment

95.     Plaintiffs incorporate herein the foregoing allegations of this Petition and further allege as follows:

96.     Defendants have been greatly enriched by their acts and omissions, including but not limited to their failure to properly control the deadly, dangerous substances released at the Smelter facility and their failure to remove and dispose of these toxic substances from the properties of Plaintiffs.  Defendants have benefited and continue to benefit from their wrongful conduct by using the properties of Plaintiffs as depositories for more than 58,000,000 pounds of deadly substances for decades and by failing to reasonably abate these substances when they in all justice and fairness should do so.

97.     Defendants lack any legal justification for allowing their deadly, dangerous waste to continue to be deposited on the properties of Plaintiffs.

98.     Plaintiffs have thereby conferred a benefit upon Defendants.  Plaintiffs did not voluntarily give this benefit.  Defendants have knowingly retained this benefit and have, therefore, been unjustly enriched.

99.     Under the circumstances described herein, it would be inequitable for Defendants to retain the benefits of their acts and omissions without paying the value thereof to Plaintiffs.

100.    No remedy at law can adequately compensate Plaintiffs for the damages

occasioned by the conscious choice of Defendants to release and maintain deadly, dangerous substances on the properties of Plaintiffs in order to avoid the expenses of properly preventing the release, removing and disposing of such materials, and repairing the properties of Plaintiffs.

101.    By reason of the unjust conduct of Defendants, Plaintiffs are entitled to damages from Defendants including but not limited to the disgorgement of all gains realized by Defendants and restitution from Defendants.

## VII. Class Action Allegations

102.    Plaintiffs incorporate herein the foregoing allegations of this Petition and further allege as follows:

103.    Plaintiffs bring this is a class action lawsuit seeking monetary damages and equitable relief pursuant to Oklahoma Statute 12 § 2023.  Plaintiffs file this lawsuit for the purpose of certifying a class of Plaintiffs who are:

a.      Oklahoma citizens currently domiciled in the State of Oklahoma who currently own private real property in the City of Blackwell, Kay County, Oklahoma, or any other private real property located within a five-mile radius of the former Smelter; and

b.      Oklahoma citizens currently domiciled in the State of Oklahoma who reside, or who at any time after January 1, 1916 have resided, on real property located in the City of Blackwell, Kay County, Oklahoma, or any other real property located within a five-mile radius of the former Smelter for a period of at least one year.

104.    The members of the Class are so numerous that joinder of all members is impracticable.  Upon information and belief, the Class, as defined, includes in excess of 2,500 private real property owners and in excess of 10,000 past and present residents.

105.    The claims of the proposed class representatives, BOB COFFEY, LORETTA CORN and LARRY and MARY ELLEN JONES, are typical of the claims of the members of the Class as all members of the class are similarly affected by Defendants' wrongful conduct complained of herein.

106.    The proposed class representatives will fairly and adequately protect the interests of the members of the Class and have retained competent and experienced counsel.

107.    The prosecution of separate actions by individual members of the Class would create a risk of:

a.      inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the Defendants; and/or

b.      adjudications with respect to individual members of the Class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

108.    Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final relief with respect to the Class as a whole.

109.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  The same conduct by each Defendant has damaged each member of the Class.  The Class members are impacted by the contamination caused by Defendants.  Factual and legal questions that are common to the Class include but are not limited to the following:

a.     whether, and to what extent, Defendants emitted or allowed to be emitted, substances from the Smelter property;

b.     whether the substances emitted or allowed to be emitted from the Smelter property were/are hazardous;

c.     whether, and to what extent, Defendants are responsible for the hazardous substances on and around the properties of Plaintiffs and the Class;

d.     whether, and to what extent, the actions and operations of Defendants have resulted in a continuing trespass on the properties of Plaintiffs and the Class;

e.     whether, and to what extent, the actions and operations of Defendants have disturbed and are disturbing the free use, possession and enjoyment of the properties of Plaintiffs and the Class so as to constitute a continuing nuisance;

f.     whether, and to what extent, Defendants possessed knowledge regarding the dangers surrounding their conduct at and about the Smelter;

g.     whether, and to what extent, Defendants provided notice or warning to the Plaintiffs and the Class regarding the dangers associated with exposure to and/or ingestion of the deadly, dangerous substances emitted from the Smelter

h.     whether, and to what extent, the actions and operations of Defendants have resulted from negligent, intentional, malicious or reckless conduct;

i.     whether, and to what extent, the actions and operations of Defendants are subject to strict liability;

j.     whether, and to what extent, Defendants have been unjustly enriched; and

k.     whether Plaintiffs and the Class are entitled to medical monitoring relief.

110.    A class action is superior to all other available methods for the fair and efficient adjudication of the controversy because:

a.    the interest, if any, of members of the Class in individually controlling the prosecution of separate actions is slight.  The majority of the members of the Class are financially unable to prosecute an individual action against Defendants. For many Class members, the expected lengthy prosecution of any individual action would result in the payment of attorneys' fees and expenses in excess of the value of the Class member's individual claim;

b.    no litigation concerning the controversy against Defendants has commenced. Any prior litigation involving the same or similar claims against Defendants has been resolved and any individual participating therein is excluded from the definition of the Class;

c.    it is desirable to concentrate the litigation of the claims in Kay County, Oklahoma, as all claims arose therein; and

d.    the difficulties, if any, in the management of this class action would be minimal, especially compared to the alternative of filing and managing 2500 separate suits.

### VIII. Prayer

111.    WHEREFORE, Plaintiffs, on behalf of themselves and the Class, respectfully request that the Court certify the two classes pled above and award the Plaintiffs and class members relief as follows:

a.    Judgment against Defendants finding them liable to Plaintiffs and the Class;

b.    Compensatory damages in an amount to be determined at trial;

c.    Punitive damages in an amount to be determined at trial;

d.   The establishment of a medical monitoring trust fund in an amount to be determined at trial;

e.   The costs and expenses of this action, including attorneys' fees;

f.   Pre-judgment and post-judgment interest at the highest rate allowed by law;

g.   Equitable relief in the form of proper and permanent abatement and/or remediation of all contaminated properties in Blackwell;

h.   Equitable relief for providing notice and medical monitoring relief to Plaintiffs and the Class; and

i.   All other relief, whether compensatory, punitive, or equitable, to which Plaintiffs and the Class may be justly entitled as a result of their damages sustained at the hands of the Defendants.

## IX.  Jury Demand

112.   Plaintiffs demand a jury trial on all issues so triable.

Respectfully submitted,

NIX, PATTERSON, & ROACH, LLP
205 Linda Drive
Daingerfield, Texas 75638
(903) 645-7333
(903) 645-2172 (fax)


NELSON J. ROACH
Texas State Bar No.  16968300
BRADLEY E. BECKWORTH
Oklahoma State Bar No.  19982
KEITH L. LANGSTON
Oklahoma State Bar No. 21921
JOHN C. HULL
Oklahoma State Bar No.  21707

BEELER, WALSH & WALSH, PLLC
4508 N. Classen Blvd.
Oklahoma City, Oklahoma 73118
(405) 843-7600
(405) 606-7050 (fax)


MICHAEL A. WALSH
Oklahoma State Bar No.  9327
BENJAMIN L. BARNES
Oklahoma State Bar No.  16173


IHRIG LAW FIRM
107 W. Blackwell Ave.
Blackwell, Oklahoma 74631
(405) 533-5353
(405) 5336-5356 (fax)


ANDREW M. IHRIG
Oklahoma State Bar No. 21233


ATTORNEYS FOR PLAINTIFFS



ORIGINAL PLEASE RETURN

Filed in the DISTRICT COURT
Kay County, Oklahoma
BLACKWELL DIV.

JUN 1 0 2008 KKC

MARY RAMEY, Court Clerk
BY *Charalyjee E. Cahill*
DEPUTY

IN THE DISTRICT COURT OF KAY COUNTY, STATE OF OKLAHOMA

BOB COFFEY, LORETTA CORN AND )
LARRY AND MARY ELLEN JONES, )
INDIVIDUALLY AND ON BEHALF OF )
ALL OTHERS SIMILARLY SITUATED )
                               )      CLASS ACTION
       PLAINTIFFS         )
                                 )      No. CJ-2008-68
           vs                  )
                                 )
1.    FREEPORT-MCMORAN COPPER )
      & GOLD INC.;               )
                                 )
2.    PHELPS DODGE CORPORATION )
                                 )
3.    CYPRUS AMAX MINERALS )
      COMPANY;                  )
                                 )
4.    AMAX, INC., f/k/a AMERICAN )
      META CLIMAX, INC., f/k/a THE )
      AMERICAN METAL COMPANY: )
                                 )
5.    BLACKWELL ZINC COMPANY, )
      INC.;                     )
                                 )
6.    BLACKWELL INDUSTRIAL )
      AUTHORITY; and           )
                                 )
7.    BNSF RAILWAY COMPANY, )
      f/k/a BURLINGTON NORTHERN )
      INC., f/k/a BURLINGTON )
      NORTHERN RAILROAD )
      COMPANY, f/k/a THE )
      BURLINGTON NORTHERN and )
      SANTA FE RAILWAY COMPANY )
                                 )
       Defendants         )

## **SUMMONS**

ATTENTION:

When service has ben made, immediately return this copy to the Court Clerk who issued it.

SCANNED

Please serve the attached summons on :

      Freeport-McMoran Copper & Gold
      Oklahoma Secretary of State, Service Agent
      2300 North Lincoln Boulevard, Room 101
      Oklahoma City, Ok. 73105-4897

Attorney for Plaintiffs:

      Nix, Patterson & Roach, LLP                 Beeler, Walsh & Walsh, PLLC
      205 Linda Drive                             4508 N. Classen Blvd.
      Daingerfield, Texas 75638               Oklahoma City, Oklahoma 73118
      (903) 645-7333; Fax (903) 645-2172     (405) 843-7600; Fax (405) 606-7050

      Ihrig Law Firm
      107 West Blackwell
      Blackwell, Ok. 74631
      (405) 533-5353; Fax (405) 533-5356

TO THE ABOVE NAMED DEFENDANT(s):

      You have been sued by the above named Plaintiffs and you are directed to file a written Answer
to the attached Petition in the Court at the above address within forty-one (41) days after service of this
summons upon you, exclusive of the day of service.  Within the same time, a copy of your answer must
be delivered or mailed to the attorneys for the Plaintiff.

      Unless you answer the petition within the time stated, judgment will be rendered against you
with costs of the action.

      Issued this __28__ day of ___May___, 2008.

                                    MARY RAMEY, COURT CLERK

                                    By _____
                                      Deputy Court Clerk

TO THE ABOVE NAMED DEFENDANT:

      This summons was served on ____6-2-08_____.

      _____
      Signature of person serving summons

**YOU MAY SEEK THE ADVICE OF AN ATTORNEY ON ANY MATTER CONNECTED WITH THIS SUIT OR YOUR ANSWER.   SUCH ATTORNEY SHOULD BE CONSULTED IMMEDIATELY SO THAT AN ANSWER MAY BE FILED WITHIN THE TIME LIMIT STATED IN THE SUMMONS.**

RETURN OF SERVICE
Certificate of Service by Mail

I certify that I mailed copies of the foregoing Summons with a copy of the Petition attached to the following named Defendant at the address shown by certified mail, addressee only, return receipt requested, on the _29th_ day of May, 2008, and receipt thereof on the date shown below:

| Defendant | Address Where Served | Date Receipted |
|---|---|---|
| Freeport-McMoran Copper &Gold, Inc. | Oklahoma Secretary of State SA  2300 North Lincoln Boulevard Room 101  Oklahoma City, OK 73105-4897 | 6-2-08 |

*Norma R. Field (signature)*

**U.S. Postal Service**
**CERTIFIED MAIL... RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)
For delivery information visit our website at www.usps.com

OFFICIAL USE

| | | 0228 |
|---|---|---|
| Postage | $7.05 | 03 |
| Certified Fee | $2.70 | Postmark Here |
| Return Reciept Fee (Endorsement Required) | $2.20 | |
| Restricted Delivery Fee (Endorsement Required) | $4.30 | |
| Total Postage & Fees | $16.25 | |

Sent To Freeport McMoran Copper & Gold
Street, Apt. No.; c/o Oklahoma Secretary
or PO Box No. Service Agent
2300 N Lincoln Boulevard, Room 101

7004 1350 0001 9550 0433

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Freeport-McMoran Copper + Gold
Oklahoma Secretary of State
Service Agent
2300 North Lincoln Boulevard, Rm 101
Oklahoma City, OK 73105-4897

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
_Donald L. Butler_  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
ALOL BUTLER   JUN 2008

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
   ☒ Certified Mail   ☐ Express Mail
   ☐ Registered   ☐ Return Receipt for Merchandise
   ☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☒ Yes

2. Article Number
(Transfer from service label)   7004 1350 0001 9550 0433

PS Form 3811, February 2004    Domestic Return Receipt   102595-02-M-1540



ORIGINAL PLEASE RETURN

Filed in the DISTRICT COURT
Kay County, Oklahoma
BLACKWELL DIV.

JUN 1 0 2008

MARX RAMEY, Court Clerk
BY
DEPUTY

IN THE DISTRICT COURT OF KAY COUNTY, STATE OF OKLAHOMA

BOB COFFEY, LORETTA CORN AND )
LARRY AND MARY ELLEN JONES, )
INDIVIDUALLY AND ON BEHALF OF )
ALL OTHERS SIMILARLY SITUATED )
                         )   CLASS ACTION

PLAINTIFFS )
                         )   No.  C J-2008-68

vs )
)
1. FREEPORT-MCMORAN COPPER )
   & GOLD INC.; )
)
2. PHELPS DODGE CORPORATION )
)
3. CYPRUS AMAX MINERALS )
   COMPANY; )
)
4. AMAX, INC., f/k/a AMERICAN )
   META CLIMAX, INC., f/k/a THE )
   AMERICAN METAL COMPANY; )
)
5. BLACKWELL ZINC COMPANY, )
   INC.; )
)
6. BLACKWELL INDUSTRIAL )
   AUTHORITY; and )
)
7. BNSF RAILWAY COMPANY, )
   f/k/a BURLINGTON NORTHERN )
   INC., f/k/a BURLINGTON )
   NORTHERN RAILROAD )
   COMPANY, f/k/a THE )
   BURLINGTON NORTHERN and )
   SANTA FE RAILWAY COMPANY )
)
      Defendants )

## **SUMMONS**

ATTENTION:

When service has ben made, immediately return this copy to the Court Clerk who issued it.

Please serve the attached summons on :

    Phelps Dodge Corporation
    CT Corporation System, Service Agent
    111 Eighth Avenue
    New York, New York 10011

Attorney for Plaintiffs:

    Nix, Patterson & Roach, LLP        Beeler, Walsh & Walsh, PLLC
    205 Linda Drive                4508 N. Classen Blvd.
    Daingerfield, Texas 75638        Oklahoma City, Oklahoma 73118
    (903) 645-7333; Fax (903) 645-2172    (405) 843-7600; Fax (405) 606-7050

    Ihrig Law Firm
    107 West Blackwell
    Blackwell, Ok. 74631
    (405) 533-5353; Fax (405) 533-5356

TO THE ABOVE NAMED DEFENDANT(s):

    You have been sued by the above named Plaintiffs and you are directed to file a written Answer to the attached Petition in the Court at the above address within forty-one (41) days after service of this summons upon you, exclusive of the day of service. Within the same time, a copy of your answer must be delivered or mailed to the attorneys for the Plaintiff.

    Unless you answer the petition within the time stated, judgment will be rendered against you with costs of the action.

    Issued this 2 8 day of May , 2008.

                 MARY RAMEY, COURT CLERK

                 By

                 Deputy Court Clerk

TO THE ABOVE NAMED DEFENDANT:

    This summons was served on ___6-2-08___.

            Signature of person serving summons

**YOU MAY SEEK THE ADVICE OF AN ATTORNEY ON ANY MATTER CONNECTED WITH THIS SUIT OR YOUR ANSWER. SUCH ATTORNEY SHOULD BE CONSULTED IMMEDIATELY SO THAT AN ANSWER MAY BE FILED WITHIN THE TIME LIMIT STATED IN THE SUMMONS.**

RETURN OF SERVICE
Certificate of Service by Mail

I certify that I mailed copies of the foregoing Summons with a copy of the Petition attached to the following named Defendant at the address shown by certified mail, addressee only, return receipt requested, on the _29th_ day of _May_____, 2008, and receipt thereof on the date shown below:

| Defendant | Address Where Served | Date Receipted |
|---|---|---|
| Phelps Dodge Corporation | CT Corporation System, SA<br>111 Eighth Avenue<br>New York, NY 10011 | 6·2·08 |

_Norma L. Child_

ORIGINAL PLEASE RETURN

Filed in the DISTRICT COURT
Kay County, Oklahoma
BLACKWELL DIV.

JUN 1 0 2008 KKC

MARY RAMEY, Court Clerk
BY
DEPUTY

IN THE DISTRICT COURT OF KAY COUNTY, STATE OF OKLAHOMA

| | |
|---|---|
| BOB COFFEY, LORETTA CORN AND LARRY AND MARY ELLEN JONES, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED )<br><br>PLAINTIFFS )<br><br>vs )<br><br>1. FREEPORT-MCMORAN COPPER & GOLD INC.; )<br><br>2. PHELPS DODGE CORPORATION )<br><br>3. CYPRUS AMAX MINERALS COMPANY; )<br><br>4. AMAX, INC., f/k/a AMERICAN META CLIMAX, INC., f/k/a THE AMERICAN METAL COMPANY; )<br><br>5. BLACKWELL ZINC COMPANY, INC.; )<br><br>6. BLACKWELL INDUSTRIAL AUTHORITY; and )<br><br>7. BNSF RAILWAY COMPANY, f/k/a BURLINGTON NORTHERN INC., f/k/a BURLINGTON NORTHERN RAILROAD COMPANY, f/k/a THE BURLINGTON NORTHERN and SANTA FE RAILWAY COMPANY )<br><br>Defendants ) | CLASS ACTION<br><br>No. C J - 2 0 0 8 - 6 8 |

## SUMMONS

ATTENTION:

When service has ben made, immediately return this copy to the Court Clerk who issued it.

SCANNED

Please serve the attached summons on :

      Cyprus Amax Minerals Company
      CT Corporation System, Service Agent
      2394 East Camelback Road
      Phoenix, Arizona 85016

Attorney for Plaintiffs:

      Nix, Patterson & Roach, LLP                Beeler, Walsh & Walsh, PLLC
      205 Linda Drive                           4508 N. Classen Blvd.
      Daingerfield, Texas 75638             Oklahoma City, Oklahoma 73118
      (903) 645-7333; Fax (903) 645-2172    (405) 843-7600; Fax (405) 606-7050

      Ihrig Law Firm
      107 West Blackwell
      Blackwell, Ok. 74631
      (405) 533-5353; Fax (405) 533-5356

TO THE ABOVE NAMED DEFENDANT(s):

      You have been sued by the above named Plaintiffs and you are directed to file a written Answer to the attached Petition in the Court at the above address within forty-one (41) days after service of this summons upon you, exclusive of the day of service. Within the same time, a copy of your answer must be delivered or mailed to the attorneys for the Plaintiff.

      Unless you answer the petition within the time stated, judgment will be rendered against you with costs of the action.

      Issued this 2.8 day of _Llay_, 2008.

                              MARY RAMEY, COURT CLERK

                              By _____
                                 Deputy Court Clerk

TO THE ABOVE NAMED DEFENDANT:

      This summons was served on ___6-3-08___.

                           _____
                               Signature of person serving summons

**YOU MAY SEEK THE ADVICE OF AN ATTORNEY ON ANY MATTER CONNECTED WITH THIS SUIT OR YOUR ANSWER. SUCH ATTORNEY SHOULD BE CONSULTED IMMEDIATELY SO THAT AN ANSWER MAY BE FILED WITHIN THE TIME LIMIT STATED IN THE SUMMONS.**

## RETURN OF SERVICE
Certificate of Service by Mail

I certify that I mailed copies of the foregoing Summons with a copy of the Petition attached to the following named Defendant at the address shown by certified mail, addressee only, return receipt requested, on the _29th_ day of _May_____, 2008, and receipt thereof on the date shown below:

| Defendant | Address Where Served | Date Receipted |
|---|---|---|
| Cypress Amax Minerals Company | CT Corporation System, SA<br>2394 East Camelback Road<br>Phoenix Az 85016 | 6-2-08 |

_Donna L. Hill_

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

PHOENIX AZ 85016   OFFICIAL USE

| | | |
|---|---|---|
| Postage | $ $12.20 | 0228 |
| Certified Fee | $2.70 | 03 |
| Return Receipt Fee<br>(Endorsement Required) | $2.20 | Postmark Here |
| Restricted Delivery Fee<br>(Endorsement Required) | $4.30 | BLACKWELL |
| Total Postage & Fees | $ $21.40 | 05/29/2008 |

Sent To Cyprus Amax Minerals Company
C T Corporation System, Service Agent
Street, Apt. No.;
or PO Box No. 2394 East Camelback Road
City, State, ZIP+4 Phoenix, Az 85016

PS Form 3800, June 2002              See Reverse for Instructions

7006 0810 0001 7694 1772

---

COMPLETE THIS SECTION ON DELIVERY

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

A. Signature
☐ Agent
☐ Addressee
CT Corporation System
Phoenix, Arizona

B. Received by (Printed Name)    C. Date of Delivery
6/2/8

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

1. Article Addressed to:

Cyprus Amax Minerals Company
CT Corporation System,
Service Agent
2394 East Camelback Road
Phoenix, Az 85016

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered      ☐ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☒ Yes

2. Article Number
(Transfer from service label)    7006 0810 0001 7694 1772

PS Form 3811, February 2004       Domestic Return Receipt       102595-02-M-1540

**ORIGINAL PLEASE RETURN**

Filed in the DISTRICT COURT
Kay County, Oklahoma
BLACKWELL DIV.

JUN 1 0 2008 KKC

MARY RAMEY, Court Clerk
BY _____
DEPUTY

IN THE DISTRICT COURT OF KAY COUNTY, STATE OF OKLAHOMA

| | |
|---|---|
| BOB COFFEY, LORETTA CORN AND LARRY AND MARY ELLEN JONES, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED | ) ) ) ) ) |
| PLAINTIFFS | ) ) ) |
| vs | ) ) |
| 1.   FREEPORT-MCMORAN COPPER & GOLD INC.; | ) ) ) |
| 2.   PHELPS DODGE CORPORATION | ) ) |
| 3.   CYPRUS AMAX MINERALS COMPANY; | ) ) ) |
| 4.   AMAX, INC., f/k/a AMERICAN META CLIMAX, INC., f/k/a THE AMERICAN METAL COMPANY; | ) ) ) ) |
| 5.   BLACKWELL ZINC COMPANY, INC.; | ) ) ) |
| 6.   BLACKWELL INDUSTRIAL AUTHORITY; and | ) ) ) |
| 7.   BNSF RAILWAY COMPANY, f/k/a BURLINGTON NORTHERN INC., f/k/a BURLINGTON NORTHERN RAILROAD COMPANY, f/k/a THE BURLINGTON NORTHERN and SANTA FE RAILWAY COMPANY | ) ) ) ) ) ) ) ) |
| Defendants | ) ) |

CLASS ACTION

No. C J - 2 0 0 8 6 8

**SUMMONS**

ATTENTION:

When service has ben made, immediately return this copy to the Court Clerk who issued it.

Please serve the attached summons on :

    Amax, Inc.
    % Cyprus Amax Minerals Company
    CT Corporation System, Service Agent
    2394 East Camelback Road
    Phoenix, Arizona 85016


Attorney for Plaintiffs:

    Nix, Patterson & Roach, LLP          Beeler, Walsh & Walsh, PLLC
    205 Linda Drive                  4508 N. Classen Blvd.
    Daingerfield, Texas 75638         Oklahoma City, Oklahoma 73118
    (903) 645-7333; Fax (903) 645-2172    (405) 843-7600; Fax (405) 606-7050

    Ihrig Law Firm
    107 West Blackwell
    Blackwell, Ok. 74631
    (405) 533-5353; Fax (405) 533-5356


TO THE ABOVE NAMED DEFENDANT(s):

    You have been sued by the above named Plaintiffs and you are directed to file a written Answer to the attached Petition in the Court at the above address within forty-one (41) days after service of this summons upon you, exclusive of the day of service.  Within the same time, a copy of your answer must be delivered or mailed to the attorneys for the Plaintiff.

    Unless you answer the petition within the time stated, judgment will be rendered against you with costs of the action.

    Issued this _14_ day of _____, 2008.


                  MARY RAMEY, COURT CLERK

                  By _____
                     Deputy Court Clerk

TO THE ABOVE NAMED DEFENDANT:

    This summons was served on _____6-2-08_____.

                  _____
                  Signature of person serving summons

**YOU MAY SEEK THE ADVICE OF AN ATTORNEY ON ANY MATTER CONNECTED WITH THIS SUIT OR YOUR ANSWER. SUCH ATTORNEY SHOULD BE CONSULTED IMMEDIATELY SO THAT AN ANSWER MAY BE FILED WITHIN THE TIME LIMIT STATED IN THE SUMMONS.**

RETURN OF SERVICE
Certificate of Service by Mail

I certify that I mailed copies of the foregoing Summons with a copy of the Petition attached to the following named Defendant at the address shown by certified mail, addressee only, return receipt requested, on the _29th_ day of _May_____, 2008, and receipt thereof on the date shown below:

| Defendant | Address Where Served | Date Receipted |
|---|---|---|
| Amax, Inc. | % Cyprus Amax Minerals Co CT Corporation System SA 2394 East Camelback Road Phoenix Az 85016 | 6·2·08 |

_Donna L. Hill_

0408.28


U.S. Postal Service CERTIFIED MAIL RECEIPT (Domestic Mail Only; No Insurance Coverage Provided)

**ORIGINAL PLEASE RETURN**

Filed in the DISTRICT COURT
Kay County, Oklahoma
BLACKWELL DIV.

JUN 1 0 2008 XKC

MARY RAMEY, Court Clerk
BY _____
DEPUTY

IN THE DISTRICT COURT OF KAY COUNTY, STATE OF OKLAHOMA

BOB COFFEY, LORETTA CORN AND        )
LARRY AND MARY ELLEN JONES,         )
INDIVIDUALLY AND ON BEHALF OF       )
ALL OTHERS SIMILARLY SITUATED       )        CLASS ACTION
                                    )
        PLAINTIFFS               )
                                    )        No. C I - 2008 68
        vs                       )
                                    )
1.  FREEPORT-MCMORAN COPPER      )
    & GOLD INC.;                 )
                                    )
2.  PHELPS DODGE CORPORATION     )
                                    )
3.  CYPRUS AMAX MINERALS         )
    COMPANY;                     )
                                    )
4.  AMAX, INC., f/k/a AMERICAN    )
    META CLIMAX, INC., f/k/a THE  )
    AMERICAN METAL COMPANY;       )
                                    )
5.  BLACKWELL ZINC COMPANY,      )
    INC.;                        )
                                    )
6.  BLACKWELL INDUSTRIAL         )
    AUTHORITY; and               )
                                    )
7.  BNSF RAILWAY COMPANY,        )
    f/k/a BURLINGTON NORTHERN    )
    INC., f/k/a BURLINGTON       )
    NORTHERN RAILROAD            )
    COMPANY, f/k/a THE           )
    BURLINGTON NORTHERN and      )
    SANTA FE RAILWAY COMPANY     )
                                    )
        Defendants               )

## SUMMONS

ATTENTION:

When service has ben made, immediately return this copy to the Court Clerk who issued it.

Please serve the attached summons on :

Blackwell Zinc Company, Inc.
The Corporation Company, Service Agent
735 First National Building
Oklahoma City, Oklahoma 73102

Attorney for Plaintiffs:

Nix, Patterson & Roach, LLP
205 Linda Drive
Daingerfield, Texas 75638
(903) 645-7333; Fax (903) 645-2172

Beeler, Walsh & Walsh, PLLC
4508 N. Classen Blvd.
Oklahoma City, Oklahoma 73118
(405) 843-7600; Fax (405) 606-7050

Ihrig Law Firm
107 West Blackwell
Blackwell, Ok. 74631
(405) 533-5353; Fax (405) 533-5356

TO THE ABOVE NAMED DEFENDANT(s):

You have been sued by the above named Plaintiffs and you are directed to file a written Answer
to the attached Petition in the Court at the above address within forty-one (41) days after service of this
summons upon you, exclusive of the day of service. Within the same time, a copy of your answer must
be delivered or mailed to the attorneys for the Plaintiff.

Unless you answer the petition within the time stated, judgment will be rendered against you
with costs of the action.

Issued this 28 day of May, 2008.

MARY RAMEY, COURT CLERK

By _____
Deputy Court Clerk

TO THE ABOVE NAMED DEFENDANT:

This summons was served on ___6-2-08_____.

_____
Signature of person serving summons

YOU MAY SEEK THE ADVICE OF AN ATTORNEY ON ANY MATTER CONNECTED WITH
THIS SUIT OR YOUR ANSWER.   SUCH ATTORNEY SHOULD BE CONSULTED
IMMEDIATELY SO THAT AN ANSWER MAY BE FILED WITHIN THE TIME LIMIT STATED
IN THE SUMMONS.

## RETURN OF SERVICE
### Certificate of Service by Mail

I certify that I mailed copies of the foregoing Summons with a copy of the Petition attached to the following
named Defendant at the address shown by certified mail, addressee only, return receipt requested, on the
_29th_ day of _May_____, 2008, and receipt thereof on the date shown below:

| Defendant | Address Where Served | Date Receipted |
|---|---|---|
| Blackwell Zinc Company, Inc. | The Corporation Company, S.A. <br> 735 First National Building <br> Oklahoma City, OK  73102 ; | 6-2-08 |

_Donna B. Bell_

0408.29



U.S. Postal Service
**CERTIFIED MAIL**™ **RECEIPT**
*(Domestic Mail Only; No Insurance Coverage*
For delivery information visit our website at www.us...

OKLAHOMA CITY  OK  73102

| | |
|---|---|
| Postage | $  $6.45 |
| Certified Fee | $2.70 |
| Return Receipt Fee (Endorsement Required) | $2.20 |
| Restricted Delivery Fee (Endorsement Required) | $4.30 |
| Total Postage & Fees | $  $15.65    05/29/20 |

Sent To  Blackwell Zinc Company,
Street, Apt. No.; The Corporation Company,
or PO Box No.  735 First National B
City, State, ZIP+4  Oklahoma City, OK 7

PS Form 3800, June 2002                                   See Reverse

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete
   item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
   so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
   or on the front if space permits.

1. Article Addressed to:

Blackwell Zinc Company, Inc.
The Corporation Company,
        Service Agent
735 First National Building
Oklahoma City, OK  73102

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X  _Jennifer Johnson_   □ Agent
                                            □ Addressee

B. Received by ( Printed Name )    C. Date of Delivery
   Johnson                              6/2/08

D. Is delivery address different from item 1?  □ Yes
   If YES, enter delivery address below:        □ No

3. Service Type
   ☑ Certified Mail      □ Express Mail
   □ Registered          □ Return Receipt for Merchandise
   □ Insured Mail        □ C.O.D.

4. Restricted Delivery? (Extra Fee)       ☑ Yes

2. Article Number
   (Transfer from service label)
   7004  1350  0001  9550  0402

PS Form 3811, February 2004      Domestic Return Receipt      102595-02-M-1540

ORIGINAL PLEASE RETURN

Filed in the DISTRICT COURT
Kay County, Oklahoma
BLACKWELL DIV.

JUN 1 0 2008

MARY RAMEY, Court Clerk
BY
DEPUTY

IN THE DISTRICT COURT OF KAY COUNTY, STATE OF OKLAHOMA

| | | |
|---|---|---|
| BOB COFFEY, LORETTA CORN AND LARRY AND MARY ELLEN JONES, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED | ) ) ) ) ) | CLASS ACTION |
| PLAINTIFFS | ) ) | No.  C J - 2008 -68 |
| vs | ) ) | |
| 1.  FREEPORT-MCMORAN COPPER & GOLD INC.; | ) ) ) | |
| 2.  PHELPS DODGE CORPORATION | ) ) | |
| 3.  CYPRUS AMAX MINERALS COMPANY; | ) ) ) | |
| 4.  AMAX, INC., f/k/a AMERICAN META CLIMAX, INC., f/k/a THE AMERICAN METAL COMPANY; | ) ) ) ) | |
| 5.  BLACKWELL ZINC COMPANY, INC.; | ) ) ) | |
| 6.  BLACKWELL INDUSTRIAL AUTHORITY; and | ) ) ) | |
| 7.  BNSF RAILWAY COMPANY, f/k/a BURLINGTON NORTHERN INC., f/k/a BURLINGTON NORTHERN RAILROAD COMPANY, f/k/a THE BURLINGTON NORTHERN and SANTA FE RAILWAY COMPANY | ) ) ) ) ) ) ) ) ) | |
| Defendants | ) | |

## **SUMMONS**

ATTENTION:

When service has ben made, immediately return this copy to the Court Clerk who issued it.

Please serve the attached summons on :

    BNSF Railway Company
    The Corporation Company, Service Agent
    735 First National Building
    Oklahoma City, Oklahoma 73102

Attorney for Plaintiffs:

    Nix, Patterson & Roach, LLP          Beeler, Walsh & Walsh, PLLC
    205 Linda Drive                     4508 N. Classen Blvd.
    Daingerfield, Texas 75638          Oklahoma City, Oklahoma 73118
    (903) 645-7333; Fax (903) 645-2172   (405) 843-7600; Fax (405) 606-7050

    Ihrig Law Firm
    107 West Blackwell
    Blackwell, Ok. 74631
    (405) 533-5353; Fax (405) 533-5356

TO THE ABOVE NAMED DEFENDANT(s):

        You have been sued by the above named Plaintiffs and you are directed to file a written Answer to the attached Petition in the Court at the above address within forty-one (41) days after service of this summons upon you, exclusive of the day of service. Within the same time, a copy of your answer must be delivered or mailed to the attorneys for the Plaintiff.

        Unless you answer the petition within the time stated, judgment will be rendered against you with costs of the action.

        Issued this _28_ day of __May__, 2008.

                           MARY RAMEY, COURT CLERK

                           By _____
                              Deputy Court Clerk

TO THE ABOVE NAMED DEFENDANT:

    This summons was served on ____6-2-08_____.

                                _____
                         Signature of person serving summons

**YOU MAY SEEK THE ADVICE OF AN ATTORNEY ON ANY MATTER CONNECTED WITH THIS SUIT OR YOUR ANSWER.   SUCH ATTORNEY SHOULD BE CONSULTED IMMEDIATELY SO THAT AN ANSWER MAY BE FILED WITHIN THE TIME LIMIT STATED IN THE SUMMONS.**

RETURN OF SERVICE
Certificate of Service by Mail

I certify that I mailed copies of the foregoing Summons with a copy of the Petition attached to the following named Defendant at the address shown by certified mail, addressee only, return receipt requested, on the _29ª_ day of _May_____, 2008, and receipt thereof on the date shown below:

| Defendant | Address Where Served | Date Receipted |
|---|---|---|
| BNSF Railway Company | The Corporation Company SA<br>735 First National Building<br>Oklahoma City, OK  73102 | 6-2-08 |

0408.31



**U.S. Postal Service**
**CERTIFIED MAIL  RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com.

OKLAHOMA CITY, OK  73102

| | | |
|---|---|---|
| Postage | $ | $6. |
| Certified Fee | | $2. |
| Return Receipt Fee (Endorsement Required) | | $2. |
| Restricted Delivery Fee (Endorsement Required) | | $4. |
| Total Postage & Fees | $ | $15. |

Sent To  BNSF Railway Com
Street, Apt. No.;  The Corporation Com
or PO Box No.  735 First Nati
City, State, ZIP+4  Oklahoma City

PS Form 3800, June 2002

7006 0810 0001 7694 1758

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

BNSF Railway Company
The Corporation Company
Service Agent
735 First National Bldg.
Oklahoma City, OK 73102

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _Jennifer Johnson_    □ Agent   □ Addressee

B. Received by ( Printed Name)    C. Date of Delivery
Johnson

D. Is delivery address different from item 1?  □ Yes
If YES, enter delivery address below:  □ No

3. Service Type
☒ Certified Mail    □ Express Mail
□ Registered    □ Return Receipt for Merchandise
□ Insured Mail    □ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☒ Yes

2. Article Number
(Transfer from service label)
7006 0810 0001 7694 1758

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

ORIGINAL PLEASE RETURN

Filed in the DISTRICT COURT
Kay County, Oklahoma
BLACKWELL DIV.

JUN 1 0 2008 KHC

MARY RAMEY, Court Clerk
BY *Caroline Call*
DEPUTY

## IN THE DISTRICT COURT OF KAY COUNTY, STATE OF OKLAHOMA

| | |
|---|---|
| BOB COFFEY, LORETTA CORN AND LARRY AND MARY ELLEN JONES, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED ) ) ) ) | |
| PLAINTIFFS ) | CLASS ACTION |
| vs ) | No. CJ - 2008 68 |
| 1.   FREEPORT-MCMORAN COPPER & GOLD INC.; ) ) | |
| 2.   PHELPS DODGE CORPORATION ) | |
| 3.   CYPRUS AMAX MINERALS COMPANY; ) | |
| 4.   AMAX, INC., f/k/a AMERICAN META CLIMAX, INC., f/k/a THE AMERICAN METAL COMPANY; ) | |
| 5.   BLACKWELL ZINC COMPANY, INC.; ) | |
| 6.   BLACKWELL INDUSTRIAL AUTHORITY; and ) | |
| 7.   BNSF RAILWAY COMPANY, f/k/a BURLINGTON NORTHERN INC., f/k/a BURLINGTON NORTHERN RAILROAD COMPANY, f/k/a THE BURLINGTON NORTHERN and SANTA FE RAILWAY COMPANY ) | |
| Defendants ) | |

## SUMMONS

ATTENTION:

When service has ben made, immediately return this copy to the Court Clerk who issued it.

Please serve the attached summons on :

    Blackwell Industrial Authority
    Shane Frye, Executive Director
    P.O. Box 150
    Blackwell, Ok. 74631


Attorney for Plaintiffs:

    Nix, Patterson & Roach, LLP              Beeler, Walsh & Walsh, PLLC
    205 Linda Drive                            4508 N. Classen Blvd.
    Daingerfield, Texas 75638               Oklahoma City, Oklahoma 73118
    (903) 645-7333; Fax (903) 645-2172     (405) 843-7600; Fax (405) 606-7050

    Ihrig Law Firm
    107 West Blackwell
    Blackwell, Ok. 74631
    (405) 533-5353; Fax (405) 533-5356


TO THE ABOVE NAMED DEFENDANT(s):

    You have been sued by the above named Plaintiffs and you are directed to file a written Answer to the attached Petition in the Court at the above address within forty-one (41) days after service of this summons upon you, exclusive of the day of service. Within the same time, a copy of your answer must be delivered or mailed to the attorneys for the Plaintiff.

    Unless you answer the petition within the time stated, judgment will be rendered against you with costs of the action.

    Issued this _28_ day of _May_, 2008.


                        MARY RAMEY, COURT CLERK


                        By _____
                            Deputy Court Clerk

TO THE ABOVE NAMED DEFENDANT:

    This summons was served on _May 30, 2008_.

                  _____
                  Signature of person serving summons

**YOU MAY SEEK THE ADVICE OF AN ATTORNEY ON ANY MATTER CONNECTED WITH THIS SUIT OR YOUR ANSWER. SUCH ATTORNEY SHOULD BE CONSULTED IMMEDIATELY SO THAT AN ANSWER MAY BE FILED WITHIN THE TIME LIMIT STATED IN THE SUMMONS.**

RETURN OF SERVICE
Certificate of Service by Mail

I certify that I mailed copies of the foregoing Summons with a copy of the Petition attached to the following named Defendant at the address shown by certified mail, addressee only, return receipt requested, on the _29th_ day of _May_ , 2008, and receipt thereof on the date shown below:

| Defendant | Address Where Served | Date Receipted |
|---|---|---|
| Blackwell Industrial Authority. | Shane Frye, Executive Director P.O. Box 150 Blackwell, OK 74631 | 5-30-08 |

_Donna L. Ford_

0408.30

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | | |
|---|---|---|
| Postage | $ | $9.80 |
| Certified Fee | | $2.70 |
| Return Receipt Fee (Endorsement Required) | | $2.20 |
| Restricted Delivery Fee (Endorsement Required) | | $4.30 |
| Total Postage & Fees | $ | $19.00 |

Sent To Blackwell Industrial
Street, Apt. No.; Shane Frye; E-Dir
or PO Box No. P.O. Box 150
City, State, ZIP+4 Blackwell, OK 74

PS Form 3800, June 2002

7006 0810 0001 7694 1765

SENDER: COMPLETE THIS SECTION

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Blackwell Industrial Authority
Shane Frye, Executive Director
P.O. Box 150
Blackwell, OK 74631

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X _Shane Frye_  ☐ Agent  ☐ Addressee
B. Received by (Printed Name)  Shane Frye  C. Date of Delivery
D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

BLACKWELL
MAY 30 2008

3. Service Type
☒ Certified Mail  ☐ Express Mail
☐ Registered  ☐ Return Receipt for Merchandise
☐ Insured Mail  ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)  ☒ Yes

2. Article Number
(Transfer from service label)   7006 0810 0001 7694 1765

PS Form 3811, February 2004   Domestic Return Receipt



IN THE DISTRICT COURT OF KAY COUNTY, STATE OF OKLAHOMA

BOB COFFEY, LORETTA CORN AND )
LARRY AND MARY ELLEN JONES, )
INDIVIDUALLY AND ON BEHALF OF )
ALL OTHERS SIMILARLY SITUATED )    CLASS ACTION
                                )
         PLAINTIFFS )
                                )    No. CJ-2008-68
          vs )
                                )

1.    FREEPORT-MCMORAN COPPER )
      & GOLD INC.; )
                                )

2.    PHELPS DODGE CORPORATION )
                                )

3.    CYPRUS AMAX MINERALS )
      COMPANY; )
                                )

4.    AMAX, INC., f/k/a AMERICAN )
      META CLIMAX, INC., f/k/a THE )
      AMERICAN METAL COMPANY; )
                                )

5.    BLACKWELL ZINC COMPANY, )
      INC.; )
                                )

6.    BLACKWELL INDUSTRIAL )
      AUTHORITY; and )
                                )

7.    BNSF RAILWAY COMPANY, )
      f/k/a BURLINGTON NORTHERN )
      INC., f/k/a BURLINGTON )
      NORTHERN RAILROAD )
      COMPANY, f/k/a THE )
      BURLINGTON NORTHERN and )
      SANTA FE RAILWAY COMPANY )
                                )
         Defendants )

## ALIAS SUMMONS

ATTENTION:

When service has ben made, immediately return this copy to the Court Clerk who issued it.

Please serve the attached summons on :

      Freeport-McMoran Copper & Gold
      Mr. Richard C. Adkerson, President and CEO
      One North Central Avenue
      Phoenix, Arizona 85004

Attorney for Plaintiffs:

Nix, Patterson & Roach, LLP
205 Linda Drive
Daingerfield, Texas 75638
(903) 645-7333; Fax (903) 645-2172

Beeler, Walsh & Walsh, PLLC
4508 N. Classen Blvd.
Oklahoma City, Oklahoma 73118
(405) 843-7600; Fax (405) 606-7050

Ihrig Law Firm
107 West Blackwell
Blackwell, Ok. 74631
(405) 533-5353; Fax (405) 533-5356

TO THE ABOVE NAMED DEFENDANT(s):

      You have been sued by the above named Plaintiffs and you are directed to file a written Answer to the attached Petition in the Court at the above address within forty-one (41) days after service of this summons upon you, exclusive of the day of service.  Within the same time, a copy of your answer must be delivered or mailed to the attorneys for the Plaintiff.

      Unless you answer the petition within the time stated, judgment will be rendered against you with costs of the action.

      Issued this _9th_ day of _June_ , 2008.

                              MARY RAMEY, COURT CLERK

                              By _Kimberly Carlos_
                              Deputy Court Clerk

TO THE ABOVE NAMED DEFENDANT:

      This summons was served on _____.

                    _____
                    Signature of person serving summons

**YOU MAY SEEK THE ADVICE OF AN ATTORNEY ON ANY MATTER CONNECTED WITH THIS SUIT OR YOUR ANSWER.   SUCH ATTORNEY SHOULD BE CONSULTED IMMEDIATELY SO THAT AN ANSWER MAY BE FILED WITHIN THE TIME LIMIT STATED IN THE SUMMONS.**

RETURN OF SERVICE
Certificate of Service by Mail

I certify that I mailed copies of the foregoing Summons with a copy of the Petition attached to the following named Defendant at the address shown by certified mail, addressee only, return receipt requested, on the _____ day of May, 2008, and receipt thereof on the date shown below:

| Defendant | Address Where Served | Date Receipted |
|---|---|---|
| Freeport-McMoran Copper &Gold, Inc. | _____ | |
| | _____ | |
| | _____ | |
| | _____ | |

0408.22